David B. SCHAPIRO, Plaintiff–
Appellant,

v.

NEW YORK CITY DEPARTMENT OF
HEALTH and The City of New York,
Defendants–Appellees.

Docket No. 01–7146.

United States Court of Appeals,
Second Circuit.

Dec. 28, 2001.

Irwin Schapiro, Las Vegas, NV, for Appellant.

Pamela Seider Dolgow, Elizabeth Natrella, New York, NY, for Appellee.

Present FEINBERG, CARDAMONE, POOLER, Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Plaintiff-appellant David B. Schapiro appeals from the January 10, 2001 order granting summary judgment on both of plaintiff's claims in favor of defendants New York City Department of Health ("DOH") and the City of New York ("City"). For the reasons that follow, we affirm.

Schapiro worked as a staff analyst for the DOH from 1989 to 1994 and worked in various other positions for the City for a number of years before that. In 1989, construction began on the building in which he was located, and Schapiro developed respiratory problems, which he and some of his doctors attributed to dust and fumes from the construction work and poor ventilation. Schapiro's respiratory problems intensified, forcing him to miss work frequently. After a leave of absence of almost a year, Schapiro returned to work in October of 1990 at a new location.[1] Schapiro did not suffer from the same ailments at this location, or at least not to the same extent, and he worked without incident. In 1991, Schapiro's DOH unit transferred to a new building, and his respiratory problems again intensified. Scha-

---

1. On November 18, 1992, a Worker's Compensation Judge awarded Schapiro worker's compensation for that period. The decision was affirmed on appeal.

piro made numerous complaints about the conditions and eventually filed an official grievance. Attempts to relocate Schapiro within the building were not successful. Eventually, in 1992, Schapiro's supervisor became unwilling to cooperate with Schapiro's repeated requests for transfers and suggested that Schapiro quit or apply for disability benefits. In November 1993, Schapiro "applied for early retirement due to 'chronic job related illness'" and retired in June of 1994.

On May 27, 1994, Schapiro filed an employment discrimination complaint with the EEOC, and thus automatically with the NYSDHR. On August 8, 1995, after he received his right to sue letter from the EEOC, Schapiro filed the instant lawsuit alleging employment discrimination in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), and negligence under New York common law. In addition, on January 23, 1998, Schapiro applied for SSDI benefits. His application was denied on April 21, 1998, as was his request for reconsideration. On January 10, 2001, the district court granted defendants' motion for summary judgment. Schapiro appeals this decision on a number of grounds. We review a district court's decision to grant summary judgment *de novo.*

■ Schapiro argues first that the district court erred in dismissing as time barred claims arising from actions (1) prior to July 26, 1992, and (2) prior to July 31, 1993. With respect to the former decision, we find no error. The district court granted summary judgment on plaintiff's claims alleging "discriminatory actions taken prior to July 26, 1992" on the grounds that such actions are time barred by the effective date of the ADA. The ADA, 42 U.S.C. §§ 12101–12213 (1995), was enacted on July 26, 1990. Title I of that Act, governing employment, became effective on July

26, 1992. *See* Pub.L. No. 101–336, § 108, 104 Stat. 327, 337 (1990) ("This title shall become effective 24 months after the date of enactment."); *Smith v. United Parcel Serv. of Am., Inc.,* 65 F.3d 266, 266 (2d Cir.1995); 9 Lex K. Larson, Employment Discrimination §§ 151.01 .03 (2d ed.2001). The ADA does not apply retroactively to acts occurring before the effective date. *See Smith,* 65 F.3d at 266. Plaintiff argues that the ADA became effective "as to a government entity" on January 26, 1992 because Title II of the ADA, governing public services, became effective eighteen months after enactment, on January 26, 1992. *See* Pub.L. 101–336, § 231(a), 104 Stat. 327, 346 (1990) ("[T]his part shall become effective 18 months after the date of enactment of this Act."); Larson, *supra,* at § 151.01 n. 7. This, however, is irrelevant. Plaintiff specifically sued under Title I of the ADA and did not allege violations under Title II or even mention Title II at any point prior to the appeal. Regardless of whether individuals may also sue for employment discrimination under Title II, as plaintiff argues, plaintiff did not, in fact, sue under Title II. Thus, the effective date of Title I applies, and plaintiff's claims arising from actions prior to July 26, 1992 are time barred.

The district court also granted summary judgment on plaintiff's claims arising from actions occurring prior to July 31, 1993 on the ground that ADA complaints must be filed with the EEOC within three hundred days of the alleged discriminatory occurrence in order to be actionable. *See* 42 U.S.C. § 12117(a), 2000e–5(e)(1); *Harris v. City of New York,* 186 F.3d 243, 247–48 (2d Cir.1999). Because it is undisputed that plaintiff filed his EEOC and NYSDHR complaint on May 7, 1994, the district court granted summary judgment on all claims prior to July 31, 1993, which is three hundred days before that filing.

Plaintiff argues that this was erroneous because he is entitled to an exception that tolls the running of the three hundred days for continuing violations.

■ "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). In cases alleging a continuing violation, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it," as long as a continuing violation is alleged in the EEOC complaint and the lawsuit. *Id.* at 703 (internal citations and quotations omitted); *see also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.1985). Thus, "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell*, 23 F.3d at 704.

Schapiro clearly alleged a continuing violation of the ADA, both in his EEOC charge and in his federal complaint. He filed a complaint with the EEOC and NYSDHR on May 27, 1994 and alleged a series of specific, discriminatory acts that operated to create a policy of discrimination. Accepting the facts as true for the purposes of summary judgment, defendants began discriminating against Schapiro by failing to accommodate his disability in 1989 and continued to discriminate against him by repeatedly not accommodating him until the time at which he had no alternative but to retire in 1994. Because plaintiff specifically alleged a continuing violation and offered sufficient evidence to support that claim, the district court's decision granting summary judgment on claims prior to July 31, 1993 is erroneous. Plaintiff is entitled to sue for all discriminatory actions occurring from July 26, 1992 forward. Because we find that Schapiro does not establish a prima facie case of discrimination, however, this erroneous ruling was harmless.

■ Plaintiff next argues that he has a claim of employment discrimination under not only the ADA but also under "N.Y. State Human Rights Laws and parallel provisions in N.Y.C. Administrative Code" in that defendants engaged in intentional discrimination and retaliation in violation of New York State law. Schapiro did not include these causes of action in his complaint, and the record does not reflect any mention of it at any point below. The only state law claim contained in the complaint was Plaintiff's second cause of action, alleging a common law negligence claim that defendants "had the duty to exercise reasonable care to provide plaintiff with a safe place to work." (The district court appropriately held that such a negligence claim is barred by N.Y. Work. Comp. Law § 29(6) and granted summary judgment in favor of defendants, and plaintiff does not appeal that decision.) Although Plaintiff is correct that by filing his EEOC complaint, he also complied with the requirements of filing with NYSDHR, and thus he *could have* brought a cause of action under the human rights laws of New York, he did not, in fact, bring such an action. In order to preserve his rights under state law, he needed to assert those state rights in his federal lawsuit. Because the complaint does not plead intentional discrimination under state law, Schapiro cannot attempt to assert those rights for the first time on appeal.

■ Plaintiff next argues that the district court erred in finding that he was not disabled within the meaning of the ADA.

To establish a disability, an individual must show one of three things: (1) that he has a physical or mental impairment that substantially limits a major life activity; (2) that he has a record of such impairment; or (3) that his employer regards him as having such an impairment. 42 U.S.C. § 12102(2). We find no clear error in the district court's decision that Schapiro did not set forth evidence to establish that defendants regarded him as having a disability or that he had a record of such a disability.[2] The evidence suggests that the defendants did not believe Schapiro was impaired in a substantially limiting way at all. Therefore, the focus is on whether Schapiro has established an impairment that limits a major life activity.

For the purposes of summary judgment, Schapiro has shown that he had a physical impairment of some kind. Further, it is not disputed that breathing and working, the activities Schapiro alleges were limited by his disability, are major life activities. *See, e.g., Sutton v. United Airlines, Inc.,* 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998). What is disputed is whether Schapiro's physical impairments substantially limited either of those major life activities. Substantially limits includes being " '[u]nable to perform a major life activity that the average person in the general population can perform'; or [being] '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in

the general population can perform that same major life activity.' " *Sutton,* 527 U.S. at 480, 119 S.Ct. 2139 (quoting 29 C.F.R. § 1630.2(j)) (first and third alterations in original).

Schapiro set forth evidence that he had difficulty working and breathing at his initial work location and at the Broadway location. Although his reports of difficulty breathing and working are relatively consistent over the time during which Schapiro worked at the locations in question, the evidence does suggest that the majority of the conditions subsided after Schapiro was removed from the work location. Therefore, Schapiro has not shown that his physical impairment substantially limited his ability generally to work in jobs as a staff analyst, as opposed to his particular job at a particular location. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs," not simply a particular job. *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139; *see also Muller v. Costello,* 187 F.3d 298, 312 (2d Cir.1999) ("If the plaintiff establishes only 'the inability to perform a single, particular job,' he has failed to establish a substantial impairment to his major life activity of working.") (quoting 29 C.F.R. § 1630.2(j)(3)(i)); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723–24 (2d Cir.1994) (rejecting plaintiff's claim that she was disabled because she could only show that her respiratory problems limited her ability to work in her current job at its current location). Schapiro's evidence shows that his ability to perform

---

2. Schapiro argues that the documents contained in his employee file, including the complaints, grievances, records, and Worker's Compensation Board findings, constitute a record of impairment sufficient to meet the definition of disability. While these may establish a record of the physical impairment, they do not establish a record that the physical impairment created a substantial limitation. In order to establish a substantial limitation, we must conduct the same analysis of the effect of the impairment on Schapiro's breathing and working as reflected in those records.

the major life activity of working improved when the job was moved to a different location-the Worth Street location. Thus, his claim is based on the location of his particular job, not a general class of jobs, and he has not established that his physical impairment substantially limited his work.

Furthermore, Schapiro did not offer sufficient evidence of respiratory problems outside of his work activity. The evidence again suggests that the substantial limitation in breathing was limited primarily to times when he was at work. Schapiro did not offer sufficient evidence to show breathing problems of the same duration and intensity outside of the work location or during other activities. Therefore, Schapiro has failed to establish that his physical impairments substantially limited him in the major life activities of either breathing or working. As such, he has failed to show he is a disabled individual for the purposes of the ADA.

Even assuming, arguendo, that Schapiro established that he is disabled within the meaning of the ADA, he would still need to show the defendants could have reasonably accommodated him. In this case, Schapiro argues that a reasonable accommodation would have been to relocate him to a different, more spacious, clean office. However, Schapiro's SSDI applications suggest that any disability he had could not be accommodated in this way. In his application for reconsideration, filed on June 18, 1998, Schapiro wrote, "I am totally disabled as legally required, and unable to work and totally unable to perform my past work as a staff analyst." Shapiro also noted that his severe condition left him "unable to function mentally and physically as needed to adhere to any kind of job schedule and totally unable to perform the duties of a staff analyst." Although statements in the application and reconsideration for SSDI do not automatically preclude a finding that Schapiro could be reasonably accommodated, plaintiff does need to explain any contradictory statements. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Schapiro's statements in those applications contradict his assertions in this lawsuit that he could work in a different location, and Schapiro's argument that the SSDI application contained "no materially contradictory statements" is insufficient to explain these statements that he was unable to work. Therefore, even assuming he is disabled, Schapiro has failed to show he could be reasonably accommodated.

Finally, Schapiro agues that his counsel's performance was ineffective and inadequate and that the interest of justice requires he be given another opportunity to make his case. Schapiro's argument is meritless for two reasons. First, he puts forth no evidence to prove his attorneys were inadequate. The only information to support the claim that his last attorneys were inadequate is the assertion of his present attorney "[u]pon information and belief" that the attorneys were disciplined. This assertion without evidence does not show incompetence. Second, this is not a malpractice proceeding. Schapiro may file a malpractice claim against his former attorneys and allege that they neglected his case and performed inadequately, causing him prejudice. The appropriate forum in which to assert these claims is not on appeal from a summary judgment motion.